IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01775-CNS-STV

ARTHUR BURNHAM,

    Plaintiff,

v.

VILLANI, *Nurse Practitioner*,
CORRECTIONAL HEALTH PARTNERS, and
HONEA, *Nurse Practitioner*,

    Defendants.

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO") (ECF No. 33), which was filed on August 4, 2023. For the reasons explained below, Plaintiffs' motion is GRANTED.

### II. BACKGROUND[1]

Plaintiff Arthur Burnham, proceeding *pro se*,[2] is presently incarcerated at Centennial Correctional Facility in the Colorado Department of Corrections (ECF No. 30, ¶ 1). Correctional

---

[1] The following facts are drawn from Mr. Burnham's Amended Verified Complaint (ECF No. 30) and the instant TRO motion (ECF No. 23).

[2] Because Mr. Burnham proceeds *pro se* in this action, the Court liberally construes his filings and holds them to less stringent standards than formal filings drafted by lawyers. *See United States v. Trent*, 884 F.3d 985, 993 (10th Cir. 2018). However, the Court will not act as Mr. Burnham's advocate, and he is governed by the same procedural rules and requirements of substantive law that govern other litigants. *See Dodson v. Bd. of Cnty. Comm'rs*, 878 F.Supp.2d 1227, 1235–36 (D. Colo. 2012).

1

Health Partners ("CHP") provides healthcare services to inmates at this facility (*see id.*, ¶¶ 18–19). Currently, Mr. Burnham is scheduled to be released from custody on October 7, 2023.[3]

Beginning in October 2022, Mr. Burnham submitted multiple kites complaining of "severe intestinal pain and putrefaction of the colon," which went unanswered by CHP personnel for months (ECF No. 30, ¶¶ 2–3). In February 2023, Mr. Burnham finally underwent a colonoscopy off site, which revealed that he had "inflammation of a diverticulum in the intestinal tract, causing fecal stagnation and pain," "a hemorrhage of the colon," and "a polyp" that was potentially cancerous (*id.*, ¶ 7). That same month, Mr. Burnham had an emergency medical visit for experiencing week-long "bleeding out of [his] colon," along with "severe putrefaction increase and pain" (*id.*, ¶ 8). During that visit, Nurse Villani informed Mr. Burnham that although he needed a C.T. scan to investigate the cause of his bleeding, "it was [CHP's] policy to not authorize any expensive medical procedures" for inmates with imminent release dates (*see id.*, ¶¶ 9–10).

During the ensuing months, Mr. Burnham's pain and colon disease continued unabated (*see* ECF No. 30, ¶ 12). In March 2023, Mr. Burnham "became so distressed in pain and [with] thoughts of a colostomy bag, he attempted suicide by cutting his neck open 4 inches" (*id.*, ¶¶ 14–15). While his neck wound was being stitched up, Mr. Burnham "pleaded with [Nurse] Villani to do something about the bleeding and colon pain"; Nurse Villani reiterated that "she could not get [CHP's] authorization for the C.T. scan or expensive medical care for the colon because [Mr. Burnham] was being released in a few months" (*id.*, ¶¶ 16–20). Meanwhile, throughout April and

---

[3] Publicly available records maintained by the Colorado Department of Corrections reveal that Mr. Burnham's estimated mandatory release date is October 7, 2023. *See Schendzielos v. Silverman*, 139 F.Supp.3d 1239, 1251 (D. Colo. 2015) (a court may take notice of "facts which are a matter of public record").

May 2023, Mr. Burnham's "fecal stagnation of the intestinal tract [became] intolerable and very painful" (*id.*, ¶ 25).

By June 2023, Mr. Burnham's "intestinal pain [had] risen to extreme" levels, and he submitted at least five kites which, as before, went unanswered by CHP personnel (ECF No. 30, ¶ 29). That same month, swab testing revealed that Mr. Burnham's fecal matter contained blood (*id.*, ¶¶ 51–53). Mr. Burnham had also "developed staph infections on his chest, arms and rectum"; Nurse Honea expressed concern that Mr. Burnham had "life-threatening rectal sepsis" and prescribed antibiotics (*id.*, ¶¶ 26–27). Nurse Honea further informed Mr. Burnham that while "treatment for his diseased colon would involve surgery," there was "not enough time to do anything" about his medical condition because he "was being released in 100 days" (*id.*, ¶¶ 30, 46–47).

In July 2023, Mr. Burnham submitted more kites which again went unanswered by CHP personnel, and his "intestinal pain and infections on [his] rectum and [buttocks] increased" (ECF No. 30, ¶¶ 54–55). Later that month, Mr. Burnham "cut both his arms open in desperation to be taken to the hospital rather than suffer a lingering death or colostomy surgery" (*id.*, ¶ 56).

In the instant motion, which the Court received on August 4, 2023, Mr. Burnham seeks a TRO requiring Defendants "to arrange for an examination and a plan of treatment by a qualified specialist, and "to carry out that plan of treatment" as to his diseased colon (ECF No. 23 at 5).

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes courts to enter preliminary injunctions and issue TROs. Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to the court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881,

884 (10th Cir. 1933). The procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted).

A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

The Tenth Circuit specifically disfavors injunctions that will (1) alter the status quo, (2) mandate an affirmative act by the defendant, or (3) afford all the relief that the movant could expect to win at trial. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2004). A request for disfavored injunctive relief "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)). Accordingly, where a movant requests a disfavored injunction, the movant "must make a strong

4

showing both on the likelihood of success on the merits and on the balance of the harms." *Colo. v. E.P.A.*, 989 F.3d 874, 884 (10th Cir. 2021) (quotation omitted).

### IV. ANALYSIS

As an initial matter, the Court observes that Mr. Burnham's request for immediate medical examination and treatment amounts, in multiple senses, to a disfavored injunction. *See Schrier*, 427 F.3d at 1259. For instance, his requested relief would both alter the status quo and mandate an affirmative act on Defendants' part—i.e., requiring Defendants to arrange or provide immediate medical treatment for Mr. Burnham's diseased colon. Accordingly, because Mr. Burnham seeks a disfavored injunction, his motion must be "more closely scrutinized." *See Schrier*, 427 F.3d at 1259.

Notwithstanding this heavier burden, the Court concludes that a TRO is clearly warranted in this case. First, the Court finds that Mr. Burnham has made a strong showing of a reasonable likelihood of success in this matter. To prevail on an Eighth Amendment claim based on deliberate indifference to his serious medical needs, Mr. Burnham must establish (i) an objective, sufficiently serious medical need, and (ii) that Defendants subjectively disregarded an excessive risk to his health and safety. *Nellson v. Matevousian*, No. 21-cv-02710-RM, 2021 WL 4775274, at *1 (D. Colo. Oct. 13, 2021) (citing *Mata v. Saiz*, 427 F.3d 745, 751–52 (10th Cir. 2005)). As to the objective prong, "a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Nellson*, 427 F.3d at 751). Mr. Burnham's allegations regarding the seriousness of his medical condition—diverticulosis of the colon requiring surgery, rectal bleeding, life-threatening sepsis, and severe, uncontrolled

5

abdominal pain—are more than sufficient to establish the objective component of his Eighth Amendment claim (*see, e.g.*, ECF No. 30, ¶¶ 7–8, 26–27, 51–53). Furthermore, regarding the subjective prong, Mr. Burnham must show that Defendants "were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they drew such an inference." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Here, Mr. Burnham has alleged that Nurses Villani and Honea both expressly acknowledged that his various medical ailments required expensive testing and treatment, including surgery, but that CHP was unwilling to provide the necessary treatment due to Mr. Burnham's imminent release from custody (*see* ECF No. 30, ¶¶ 9–10, 16–20, 30, 46–47). These allegations regarding Defendants' knowledge therefore suffice to establish the subjective component of his Eighth Amendment claim as well.[4]

Second, the Court finds that Mr. Burnham has shown a significant risk of probable irreparable harm. Regarding this TRO element, Mr. Burnham "must demonstrate a significant risk that he . . . will experience harm that cannot be compensated after the fact by money damages." *Carranza v. Reams*, 614 F.Supp.3d 899, 917 (D. Colo. 2020) (quoting *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016)). Here, Mr. Burnham has alleged that his serious medical ailments will be fatal to him or, at a minimum, result in permanent physical impairment (i.e., removal of his diseased colon and placement of a colostomy bag), in the absence of imminent medical intervention (*see* ECF No. 23 at 6–7, 8; *see also* ECF No. 30, ¶¶ 35, 41, 59, 68).

---

[4] It appears though it was properly served (*see* ECF Nos. 25, 35), CHP has failed to file a timely answer or otherwise respond to the complaint. Accordingly, because Mr. Burnham's Amended Verified Complaint sufficiently alleges that he will suffer immediate and irreparable harm before CHP's response, the Court grants the instant motion without notice to CHP pursuant to Rule 65(b)(1). Further, the Court notes that Mr. Burnham may achieve success by filing a motion for entry of default, should that be appropriate.

Third, the Court finds that the balance of equities weighs heavily in Mr. Burnham's favor. The allegations set forth by Mr. Burnham indicate that he faces a high risk of serious illness or death if he is not permitted to access treatment for his medical ailments. This outweighs any harms that could befall Defendants, which may include the costs of complying with Mr. Burnham's proposed injunctive relief. Although the Court acknowledges Defendants' interest in administering cost-effective healthcare to inmates in its facility, "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." Carranza, 614 F.Supp.3d at 917 (quoting *Brown v. Plata*, 563 U.S. 493, 511 (2011)).

Fourth and finally, the Court finds that entering a TRO would further the public interest. Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights," as a TRO would do here. *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *accord Duran v. Anaya*, 642 F.Supp. 510, 527 (D.N.M. 1986) ("Respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest. The public at large is not served by unnecessary deaths and serious injuries, or by the willful or wanton infliction of pain and suffering on prisoners[.]").

In sum, Mr. Burnham has met his burden to establish all four factors warranting injunctive relief.

## V.  CONCLUSION

Consistent with the foregoing analysis, Plaintiff's Motion for Temporary Restraining Order (ECF No. 23) is GRANTED.[5] Additionally, **this matter is for a Hearing on October 13, 2023 10:00 a.m. in the Alfred A. Arraj U.S. District Courthouse, Courtroom A702, 7th floor, 901 19th Street, Denver, Colorado, 80294.**  The Plaintiff may participate telephonically by dialing (571) 353-2301 and entering Access Code 770126989#.

DATED this 4th day of October 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[5] Given Mr. Burnham's apparent mandatory release date of October 7, 2023, Mr. Burnham is directed to promptly advise the Court in writing if and when he is released from custody.